# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00354-CR

**Jack Elwood Hooper, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-2001-620, HONORABLE JACK H. ROBISON, JUDGE PRESIDING[1]

### O P I N I O N

Appellant Jack Elwood Hooper appeals his conviction for possession of a controlled-substance analogue of more than four hundred grams. *See* Tex. Health & Safety Code Ann. ' 481.123(b)(2) (West Supp. 2003). In a bench trial, the trial court found appellant guilty of the offense charged. Appellant Aentered a plea of true@to the enhancement paragraph of the indictment alleging a prior felony theft conviction. The trial court assessed appellant=s punishment at fifteen years= imprisonment. We will affirm the trial court=s judgment.

---

[1] The judgment of conviction was signed by Judge Gary Steele, but Judge Jack H. Robison presided at appellant=s trial.

## BACKGROUND

Appellant was originally indicted for this offense on March 2, 1995. The first count of the original indictment alleged that on or about November 17, 1994, appellant:

> knowingly and intentionally possess[ed] a controlled substance analogue, namely, dextromethorphan and ephedrine, a substance which is intended in whole or in part for human consumption and which is specifically designed to produce an effect substantially similar to or greater than the effect of the controlled substance, to wit: 3, 4 methylenedioxy methamphetamine in an amount of aggregate weight, including any adulterants and dilutants, of more than four hundred grams.

The primary offense was prosecuted under the provisions of section 481.123(b)(2) of the health and safety code, which were in effect in 1994. *See* Act of May 18, 1989, 71st Leg., R.S., ch. 678, ' 1, 1989 Tex. Gen. Laws 2230, 2940 (Tex. Health & Safety Code Ann. ' 481.123(b)(2)).[2] On December 5, 2001, appellant was reindicted while the original 1995 indictment was pending. The reindictment contained a tolling paragraph alleging that appellant had been indicted on March 2, 1995, for the same offense and that

_____

[2] The indictment tracks the language of section 481.123(b)(2), which provides:

> (b)  For the purposes of this chapter, a controlled substance analogue is considered to be a controlled substance listed in Penalty Group 2 if the analogue in whole or in part is intended for human consumption and:
>
> . . . .
>
> (2)  the analogue is specifically designed to produce an effect substantially similar to or greater than the effect of a controlled substance listed in Schedule II or Penalty Group 2.

Tex. Health & Safety Code Ann. ' 481.123(b)(2) (West Supp. 2003).

indictment was pending when the reindictment was returned.  The third paragraph of the reindictment alleged a prior felony theft conviction on September 26, 1991, for enhancement of punishment.

On May 7, 2002, appellant waived trial by jury and entered a plea of Anot guilty@ to the primary offense, the only count in the reindictment. Appellant entered pleas of Atrue@ to the tolling paragraph and to the allegations in the enhancement paragraph. The evidence was presented in the form of affidavits and stipulations after appellant waived the appearance, confrontation, and cross-examination of witnesses. In a sworn stipulation, appellant admitted that on November 17, 1994, he knowingly and intentionally possessed dextromethorphan and ephedrine in an amount of more than four hundred grams. Appellant also stipulated to the admission of the State=s exhibits. Among the exhibits offered were the offense report, and news articles from the Associated Press [printed in the *Corpus Christi-Caller-Times*] and the *Dallas Morning News* concerning the increasing use by young people of high doses of dextromethorphan, a noncontrolled substance, which can produce the effects of the controlled substance known as Aecstacy.@ Department of Public Safety Chemist Joel Budge stated in his affidavit that the 930 tablets submitted to him were dextromethorphan and ephedrine and were similar in appearance and designed to produce an effect that was substantially similar to 3, 4 methylenedioxy methamphetamine, which is ecstasy, and were intended for human consumption. Dr. William Watson, of the University of Texas Health Science Center at San Antonio, described in his affidavit that the effects on the human body of a combination of dextromethorphan and ephedrine would be indistinguishable from the effect of ecstasy. Pharmacist David Zatopek detailed in his affidavit the effects of high doses of dextromethorphan and ephedrine, and that together they were being abused for their side effects. Hays County Narcotic Task Force Sergeant Chase Stapp swore in his affidavit that, based upon his experience, dextromethorphan and ephedrine are packaged together and sold by drug dealers as ecstasy.

Appellant offered the affidavit of Max Courtney, a forensic chemist, who stated that dextromethorphan and ephedrine were non-controlled substances and sold to the public over the counter and often used as a cough suppressant. We observe that 3, 4 methylenedioxy methamphetamine (ecstasy) was a controlled substance listed in Penalty Group 2 at the time of the charged offense. *See* Act of May 18, 1989, 71st Leg., R.S., ch. 678, ' 1, 1989 Tex. Gen. Laws 2230, 2928-29 (Tex. Health & Safety Code Ann. ' 481.103(1), since amended).

## DISCUSSION

Under ΛBrief of the Argument,@appellant presents his single point of error as follows: ΛThe Statute making it an offense to possess a chemical analogue ≻specifically designed to produce an effect substantially similar to a controlled substance= is vague *as applied to appellant*.@ (Emphasis added.) However, our review of the record reveals that appellant failed to raise the Λas applied@issue at the trial court in any manner. The question first presented is whether appellant≠s contention was preserved for review. *See* Tex. R. App. P. 33.1(a)(1). As a general rule, trial counsel must object or otherwise preserve error, even if it is Λincurable@or Λconstitutional.@ *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Without proper preservation, even constitutional error may be waived. *See Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000). Questions, however, about the facial constitutionality of a statute upon which a defendant≠s conviction is based should be addressed even when such issues are raised for the first time on appeal. *See Holberg v. State*, 38 S.W.3d 137, 139 n.7 (Tex. Crim. App. 2000); *Rabb v. State*, 730 S.W.2d 751, 752 (Tex. Crim. App. 1987); *Bryant v. State*, 47 S.W.3d 80, 84 (Tex. App.СWaco 2001, pet. ref≠d); 43A George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* ' 42.253 (2d ed. 2001).

By contrast, a contention that a statute is unconstitutional *as applied to an accused* because of vagueness and uncertainty must be asserted in the trial court or it is waived. *See Curry v. State*, 910 S.W.2d 490, 496 n.2 (Tex. Crim. App. 1995); *Garcia v. State*, 887 S.W.2d 846, 861 (Tex. Crim. App. 1994); *State v. West*, 20 S.W.3d 867, 873 (Tex. App.СDallas 2000, pet. ref≠d); *Sullivan v. State*, 986 S.W.2d 708, 711 (Tex. App.СDallas 1999, no pet.). In *McGowan v. State*, the rationale underlying the foregoing rules was explained. 938 S.W.2d 732, 736 (Tex. App.СHouston [14th Dist.] 1996), *aff≠d*

*on other grounds*, 975 S.W.2d 621 (Tex. Crim. App. 1998). The *McGowan* holding has been analyzed in detail:

> In *McGowan v. State*, the Fourteenth Court of Appeals concluded that the rationale for the basic rule is that an unconstitutional statute affects the jurisdiction or power of the courts to render a criminal judgment against the accused, and the lack of this jurisdiction or power can be raised at any time. Thus, *McGowan* reasoned, the rule should be applied only to those constitutional challenges that contest the power of the trial court to enter and enforce a judgment. A Afacial challenge@contests this power; a challenge to the statute *as applied* does not, although it raises a possible Adefense@ to conviction pursuant to this power. Invoking the categorization of rights in *Marin v. State*, [851 S.W.2d 275 (Tex. Crim. App.1993)], the court reasoned that the right not to be convicted of a Penal Code provision vague and overbroad as applied to the facts of the case is a right subject to forfeiture by failure to assert it. Thus failure to raise the issue in the trial court means it is not preserved for appellate consideration.

43A George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* ' 42.254 (2d ed. 2001); *see also McGowan*, 938 S.W.2d at 739-41 (op. on reh=g); *accord Bader v. State*, 15 S.W.3d 599, 603 (Tex. App.CAustin 2000, pet. ref=d); *Medina v. State*, 986 S.W.2d 733, 735-36 (Tex. App.CAmarillo 1999, pet. ref=d).

Because appellant failed to raise the Aas applied@ issue in the trial court in any fashion, he has waived any right to review on his point of error to the extent that he challenges the validity of section 481.123(b)(2) solely *as applied to him*. Furthermore, even had appellant not waived his Aas applied@ contention, he has failed to show that in its operation the statute is unconstitutionally vague as applied to him; that it may be unconstitutional as to others is not sufficient. *Bynum v. State*, 767 S.W.2d 764, 774 (Tex. Crim. App. 1989); *Vuong v. State*, 830 S.W.2d 929, 941 (Tex. Crim. App. 1992).

Appellant=s point of error expressly challenges the constitutionality of the statute as applied, but he did not preserve error. However, in the argument of his brief, appellant cites four cases for general propositions of law dealing with a Afacial@ challenge to the constitutionality of a statute on the basis of vagueness. It is obvious that appellant must have reference to that portion of the statute under which he was convicted, which qualifies a substance analogue as a controlled substance if the analogue is intended for human consumption and Athe analogue is specifically designed to produce an effect substantially similar to or greater than the effect of a controlled substance listed in Schedule II or Penalty Group 2.@ Tex. Health & Safety Code Ann. ' 481.123 (b)(2). Appellant urges that section 481.123(b)(2) is unconstitutionally vague because the statute does not define the words Adesigned@ and Aeffect.@ Appellant does not tell us of which constitutional provision this statute runs afoul. Because appellant does not cite any state constitutional provision or claim any greater protection under the Texas constitution, we presume that appellant only relies on the due process clause of the Fourteenth Amendment to the United States Constitution. Under the circumstances, we believe it appropriate to address the Afacial@ challenge to the statute, a claim not required to be raised in the trial court below. *See Rabb*, 730 S.W.2d at 752.

When reviewing the constitutionality of a statute, we presume that the statute is valid and the legislature has not acted unreasonably or arbitrarily in enacting the statute. *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978); *Ex parte Anderson*, 902 S.W.2d 695, 698 (Tex. App.CAustin 1995, pet. ref=d). The burden rests upon the individual challenging the statute to establish its unconstitutionality. *Cotten v. State*, 686 S.W.2d 140, 145 (Tex. Crim. App. 1985); *Granviel*, 561

**8**

S.W.2d at 511. This Court must uphold a statute if a reasonable construction can be ascertained which will render the statute constitutional and carry out the legislative intent. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979).

As argued in his brief, appellant seems to challenge the statute as being unconstitutionally vague on its face.[3] Such a challenge will be sustained only if the statute is impermissibly vague in all its applications. *Briggs v. State*, 740 S.W.2d 803, 806 (Tex. Crim. App. 1987). A facial challenge to the constitutionality of a statute imposes a heavy burden because the challenger must establish that no set of circumstances exists under which the act would be valid. *Briggs v. State*, 789 S.W.2d 918, 923 (Tex. Crim. App. 1990); *Anderson*, 902 S.W.2d at 699.

In examining a criminal statute for vagueness, the Court considers two factors. First, the statute must give a person of ordinary intelligence a reasonable opportunity to know an act is prohibited. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *Grayned v. Rockford*, 408 U.S. 104, 108 (1972); *State v. Edmond*, 933 S.W.2d 120, 125 (Tex. Crim. App. 1996); *Long v. State*, 931 S.W.2d 285, 287 (Tex. Crim. App. 1996); *State v. Wofford*, 34 S.W.3d 671, 678-79 (Tex. App.CAustin 2000, no pet.). A statutory provision, however, need not be mathematically precise: it need only give fair warning in light of common understanding and practices. *Grayned*, 408 U.S. at 110. Second, the statute in question must

---

[3] There is no claim of impermissible Aoverbreadth@ or that appellant=s rights under the First Amendment to the United States Constitution are involved. *See Bynum v. State*, 767 S.W.2d 769, 712 (Tex. Crim. App. 1989).

provide sufficient notice to law-enforcement personnel to prevent arbitrary or discriminatory enforcement. *Id.* at 108-09; *Papachristoee v. City of Jacksonville*, 405 U.S. 156, 162 (1972). AStatutes without identifiable standards allow policemen, prosecutors, and juries to pursue their personal predilections.@ *Smith v. Gogven*, 415 U.S. 566, 575 (1974).

As noted, appellant urges that the failure to define the words Adesigned@ and Aeffect@ renders section 481.123(b)(2) unconstitutionally vague. A statute, however, is not unconstitutionally vague merely because it fails to define words or phrases. *Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988); *Ahearn v. State*, 588 S.W.2d 327, 338 (Tex. Crim. App. 1979). When words are not defined in a statute, they are ordinarily given their plain meaning unless the statute clearly shows that they were used in some other sense. *Daniels v. State*, 754 S.W.2d 214, 219 (Tex. Crim. App. 1988); *Ely*, 582 S.W.2d at 419. Words defined in dictionaries with meanings so well known as to be understood by a person of ordinary intelligence have been held not to be vague and indefinite. *Floyd v. State*, 575 S.W.2d 21, 23 (Tex. Crim. App. 1978); *Anderson*, 902 S.W.2d at 700. Statutory words are to be read in context and construed according to the rules of grammar and common usage. Tex. Gov=t Code Ann. ' 311.011(a) (West 1988).

Common definitions of the word Adesign@ include A[t]o conceive; invent; contrive; . . . [t]o have as a goal or purpose; intent.@ *The American Heritage Dictionary of the English Language* 357 (William Morris ed., 1973). ADesign@ is synonymous with Aintend,@ Apurpose,@ or Acontemplate.@ *Webster=s Third New International Dictionary* 611 (Philip Babcock Gove ed., 1986). The word has also been defined as Aa deliberate undercover project or scheme entertained with discreditable or hostile or

**10**

often dishonest, treacherous, sinister, or seductive intent.@ *Id.* *Black=s Law Dictionary* defines Adesign@ simply as A[a] plan or scheme@ or A[p]urpose or intention combined with a plan.@ *Black=s Law Dictionary* 457 (7th ed. 1999). The word Aeffect@ has been defined as A[s]omething brought about by a cause or agent; result@ and A[t]he way in which something acts upon or influences an object: *the effect of a drug on the nervous system.*@ *The American Heritage Dictionary of the English Language* 415 (William Morris ed., 1973) (emphasis in original). AEffect@ is also defined as Athat which is produced by an agent or cause; a result, outcome, or consequence.@ *Black=s Law Dictionary* 532 (7th ed. 1999).

The statute does not clearly show that the words Adesigned@ and Aeffect@ were used in a sense different from their plain meaning; rather, these words are so well known that, in the context of the statute, it would be difficult to attribute any other meaning to them. The use of the word Adesigned@ is precise because, under section 481.123(b)(2), a controlled substance analogue is a drug that does not naturally occur and therefore must be an agent purposefully created to cause a particular result or Aeffect@ upon consumption. Further, the use of the word Aeffect@ is precise because the statute determines the particular Aeffect@ to be Asubstantially similar to, or greater than@ that Aof a controlled substance listed in Schedule II or Penalty Group 2.@ Tex. Health & Safety Code Ann. ' 481.123(b)(2). Given these common, plain definitions of Adesign@ and Aeffect,@ and given that the statute targets a specific induced Aeffect,@ we cannot say that the statute fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *Floyd*, 575 S.W.2d at 23. Furthermore, the statute establishes determinate guidelines for law enforcement. *Grayned*, 408 U.S. at 108-09. We therefore hold that the

**11**

failure to statutorily define Adesigned@ and Aeffect@ in section 481.123(b)(2) does not render that portion of the controlled substance analogue statute unconstitutionally vague on its face.

Appellant further expresses a disdain for controlled substance analogue statutes, and complains that the Texas statute in question is not like its federal statutory counterpart which is clearer and more precise. The fact that a state statute does not correspond with its federal counterpart does not render it unconstitutionally vague. A mere determination that a statute is confusing or difficult to understand is insufficient to render it unconstitutional. *Dahl v. State*, 707 S.W.2d 694, 700 (Tex. App.CAustin 1986, pet. ref=d). A statute is not vague merely because it is imprecise. *Texas Dep=t of Pub. Safety v. Chavez*, 981 S.W.2d 449, 452 (Tex. App.CFort Worth 1988, no pet.). ACondemned to the use of words, we can never expect mathematical certainty from our language.@ *Grayned*, 408 U.S. at 110.

Further, we observe that other constitutional attacks upon Texas controlled substances analogue statutes have been rejected in other contexts. *See Robinson v. State*, 783 S.W.2d 648 (Tex. App.CDallas 1990), *aff=d*, 841 S.W.2d 392 (Tex. Crim. App. 1992); *Porter v. State*, 806 S.W.2d 316 (Tex. App.CSan Antonio, no pet.); *One Thousand Four Hundred Sixty-Two Dollars in U.S. Currency v. State*, 774 S.W.2d 17 (Tex. App.CDallas 1989, writ denied).

## CONCLUSION

Appellant=s contentions are without merit. The judgment is affirmed.

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   April 24, 2003

Publish